IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN M. GATTI, SR., )
  )
    Plaintiff, )
  )
vs. ) Civil Action No. 07-1178
  )
WESTERN PENNSYLVANIA )
TEAMSTERS & EMPLOYERS )
WELFARE FUND, )
  )
    Defendant. )

AMBROSE, Chief District Judge

# OPINION AND ORDER

## Synopsis

This action asserts claims under ERISA section 502(a) to recover benefits allegedly improperly denied by Defendant.[1] Defendant has moved pursuant to Federal Rule of Civil Procedure 12(c) to dismiss this action based on Plaintiff's failure to exhaust his administrative remedies prior to commencing the action. For the reasons set forth below, I grant Defendant's motion and dismiss the action.

## OPINION

**A. Legal Standard**

Federal Rule of Civil Procedure 12(c) states: "Motion for Judgment on the Pleadings.

---

[1] By Opinion and Order, dated October 19, 2007 [Docket No. 8], I held that Plaintiff's claims for breach of contract and declaratory judgment were completely preempted by ERISA section 502(a), and denied Plaintiff's motion to remand the action to state court.

1

After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." (West 2008). "Judgment will not be granted unless the movant clearly establishes there are not material issues of fact, and he is entitled to judgment as a matter of law." Milgrub v. Continental Cas. Co., 2007 WL 625039, at *3 (W.D. Pa. Feb. 22, 2007) (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)). "The Court 'must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.'" (Id.)

In addition to the pleadings, the parties have submitted an attorney's affidavit and various letters between counsel. Rule 12(d) provides that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (West 2008). As the Third Circuit has explained, "[m]erely attaching documents to a Rule 12(c) motion, however, does not convert it to a motion under Rule 56. In ruling on a motion to dismiss, a trial court 'may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Citisteel USA, Inc. v. General Elec. Co., 78 Fed.Appx. 832, 835 (3d Cir. 2003) (quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994)). "Further, in ruling on a motion a court generally has 'discretion to address evidence outside the complaint.'" Id. (quoting Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)).

Here, neither side has questioned the authenticity of the documents submitted in support of and in opposition to the motion. Accordingly, I will consider that evidence in ruling on Defendant's Rule 12(c) motion for judgment on the pleadings.

**II. Statement of Relevant Facts**

Defendant Western Pennsylvania Teamsters & Employers Welfare Fund (the "Fund") provides for the payment of health and welfare benefits to eligible members of participating companies signatory to collective bargaining agreements entered into with local unions. The Fund is subject to the provisions of ERISA. At all relevant times, Plaintiff was an eligible participant under the Fund's Benefit Program Plan A (the "Plan"), a copy of which is annexed to the Complaint as Exhibit A.

Plaintiff was injured in a motor vehicle collision on May 15, 2007. As a result of the injuries he sustained, Plaintiff was unable to work for a period of nine weeks from May 15 through July 16, 2007. Plaintiff sought non-occupational accident benefits under the terms of the Plan in the amount of $200 per week for the nine-week period. While Plaintiff submitted all the necessary documentation of his eligibility, he refused to execute a Subrogation Acknowledgment Form. On this basis, the Fund refused to pay the requested benefits.

The Plan sets forth certain "Claim Review Procedures." (Complaint, Ex. A at 14.) It provides:

> If your claim has been either denied or partly denied, you have 60 days to appeal this denial by requesting the Trustees in writing to review your claim.
>
> Ordinarily, the Trustees will designate a Hearing Panel to review your claim at their regular Meeting which immediately follows receipt of your written request for a review. However, if your request is made less than thirty (30) days before the Trustees' next regular Meeting, they may postpone acting on your appeal until their next regular Meeting.
>
> The Hearing Panel will review your claim along with any additional information which either you or your representative wish to present to them. In preparation for this Hearing, you have the right to review all documents and other papers which affect your claim. You have the right to argue against the claim denial in writing.

> You also have the right to have a representative act on your behalf, if you wish.
>
> Following the Hearing, the Trustees shall make decision in writing which reaffirms, modifies or sets aside the former denial or partial denial. In addition, the exact reasons underlying their decision will be part of this written decision.

(Id.)

Counsel for Plaintiff and counsel for the Fund exchanged a series of letters (nine, according to Plaintiff's counsel's affidavit) addressing the parties' positions with respect to Plaintiff's entitlement to benefits. While Plaintiff has not expressly stated that he initiated the claim review procedure set forth above, the evidence submitted by Plaintiff indicates that the denial of Plaintiff's claim for benefits had been appealed and would be submitted to the Trustees for review. (See Letter from B. Delaney, Esq., attorney for the Fund, to A. Seethaler, Esq., attorney for Plaintiff, dated July 11, 2007, submitted as Exhibit A-1 to Plaintiff's Response). In the July 11th letter, counsel for the Fund stated:

> The Welfare Fund is confident that, pursuant to the language of the Plan, it has the right to subrogation in this case. As I noted in my July 6, 2007 letter, we have acknowledged your appeal of the Welfare Fund's decision to not provide benefits until Mr. Gatti signs the Subrogation Acknowledgment Form. A hearing will be held before a Welfare Fund Trustee Sub-Committee at a date and time to be determined, likely in the month of August.
>
> At that time, you may raise the issues presented in the letters you have written to me regarding the Welfare Fund's right to subrogation. After that hearing, the Trustees will issue a response to the issues that you have raised.
>
> As stated in my July 6 letter, it is Fund policy that loss of time benefits not be paid until participants sign the Subrogation Acknowledgment Form. Case law supports the Welfare Fund's right to this position. Mr. Gatti will be eligible to receive his loss of time benefits once this Form is signed in full, without changes.

(Pl. Resp., Ex. A-1.)

Counsel for the Fund wrote again to Plaintiff's counsel on July 30, 2007. (Def. Br., Ex.

4

A.) In that letter, counsel for the Fund summarizes additional letters and conversations between the parties:

> In a July 5, 2007 letter, you submitted an appeal of the Welfare Fund's decision to not provide loss of time benefits to Mr. Gatti until he signs the Welfare Fund's Subrogation Acknowledgment Form. In a July 6, 2007 letter, I acknowledged your appeal of this matter, and in a July 11, 2007 letter I indicated that a hearing would be held before a Welfare Fund Trustee Sub-Committee at a date and time to be determined, likely in the month of August.
>
> On July 25, 2007, you informed me that you were no longer interested in having this hearing and that you intended to file suit over this matter.
>
> This letter will serve as confirmation that your client is withdrawing his request for review by the Trustee Sub-Committee of the Welfare Fund's decision to not provide loss of time benefits to Mr. Gatti until he signs the Welfare Fund's Subrogation Acknowledgment Form. Please note that the Welfare Fund reserves the right to treat this withdrawal as a waiver of your client's objection to the Welfare Fund's decision to not provide loss of time benefits to Mr. Gatti until he signs the Welfare Fund's Subrogation Acknowledgment Form.

(Id.)

Counsel for Plaintiff responded by letter dated July 31, 2007. In his letter, he explained that Plaintiff "had chosen not to have a hearing before the Trustee for two reasons. The first is you told me this was not a condition precedent to filing suit, i.e. there are no exhaustion of remedies issues. The second reason is that the hearing would be a sham. You have made it known that the Trustee will follow your legal advice. You have also made it known you disagree with my position on this legal matter and that you are standing by your stated position." (Pl. Resp., Ex. A-2.) He further objected to the statement by the Fund's counsel that the withdrawal of the appeal constituted a waiver. (Id.)

Plaintiff filed his complaint in Court of Common Pleas of Allegheny County, seven days later, on August 7, 2007.

**III. Defendant's Rule 12(c) Motion**

Defendant argues that Plaintiff failed to exhaust his administrative remedies, and accordingly, the complaint should be dismissed with prejudice. Plaintiff opposes the motion on the grounds that (1) the Plan does not provide for "administrative remedies and required procedures"; and (2) even if he was required to exhaust administrative remedies, exhaustion is excused because any appeal to the Trustees would have been futile. Plaintiff further argues that "no basis has been demonstrated or exists for the severe sanction of dismissal." (Pl. Resp. at 2.)

Plaintiff's initial contention, that the Plan does not require any specific administrative remedies, is wrong on both the facts and the law. As discussed in detail in Part II above, the Plan provides for a review of denials of benefits by a Hearing Panel of the Trustees. Clearly, Plaintiff was aware of this requirement and even filed an appeal thereunder. The Fund, through its counsel, informed Plaintiff that it had received his appeal, that a hearing would be scheduled in August, that he would have the opportunity to present his arguments, and that the Trustees would issue a response thereafter.

"Except in limited circumstances, a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249 (3d Cir. 2002) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990)). "Courts require exhaustion of administrative remedies to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Id. "Moreover, trustees of an ERISA plan are granted broad fiduciary rights and responsibilities under ERISA and implementation of the exhaustion

requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making process." Id.; see also, Engers v. AT&T, 428 F. Supp.2d 213, 227 (D.N.J. 2006) ("when a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants to first address their complaints to the fiduciaries to whom Congress, in Section 305, assigned the primary responsibility for evaluating claims for benefits"). Further, "exhaustion of the administrative remedies creates a record of the plan's rationales for denial of the claim." Dellavalle v. The Prudential Ins. Co. of America, 2006 WL 83449, at *5 (E.D. Pa. Jan. 10, 2006). Accordingly, regardless of whether the review process set forth in the Plan was expressed as a precondition to commencing a lawsuit, well-established Third Circuit case law requires exhaustion of any administrative remedies prior to instituting an action under ERISA §502(a). See, e.g., Carter v. U.S. Life Ins. Co., 2007 WL 709331, at *1 (D. N.J. Mar. 5, 2007) (rejecting the plaintiff's argument that he was not required to exhaust his administrative remedies under ERISA "because the policy document itself did not specifically require it").[2]

"A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so." Harrow, 279 F.3d at 249. The Third Circuit in Harrow set forth five non-exclusive factors a court should weigh when evaluating whether to excuse exhaustion on futility grounds: "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3)

---

[2]Plaintiff, represented throughout by counsel, should have been aware of this requirement and was not entitled to rely on the alleged statement of Defendant's counsel that "there are no exhaustion of remedies issues." If nothing else, the July 30th letter from the Fund's counsel should have raised a red flag that Defendant would not abandon the requirement that Plaintiff exhaust the administrative appeals process.

7

existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." Id. at 250. All factors need not weigh equally. Id. In order to prevail, a plaintiff must provide "a clear and positive showing of futility." Id. at 249; Olay v. Hearne, 2007 WL 1520094, at *7 (W.D. Pa. May 21, 2007) ("case law requires more than a common sense conclusion about what one thinks will happen; the cases require evidence of a clear and positive showing of futility"), aff'd, 2007 WL 4468664 (3d Cir. Dec. 21, 2007).

Plaintiff argues that exhausting the administrative process in this case would have been futile because the letters from the Fund's counsel clearly indicated that the Fund would not change its position. I find that the facts of this case, even taken in the light most favorable to Plaintiff, do not support Plaintiff's position that exhaustion of the appeal process established by the Plan would have been futile.[3] In reaching this conclusion, I examine the factors set forth by the Third Circuit in Harrow.

With respect to the first and second factors, whether Plaintiff diligently pursued administrative relief and acted reasonably in seeking immediate judicial review, I find that these factors weigh against a finding of futility. Here, the Plaintiff had initiated the appeals process, and correspondence from the Fund's counsel indicated that a hearing would be held sometime in the next few weeks. This administrative process was neither onerous nor overly time-consuming. Compare Dellavalle, 2006 WL 83449, at *6 (plaintiff who filed suit after his appeal of the denial

---

[3]After receiving Plaintiff's bare bones Response to Defendant's Rule 12(c) motion, I requested that Plaintiff submit a brief in support of his position. I note that the "brief" submitted by Plaintiff's counsel failed to cite a *single* case in support of Plaintiff's position nor did it address the cases relied upon by Defendant.

8

of benefits was also denied failed to exhaust administrative remedies where the plan called for a denial of claim followed by two appeals and voluntary third appeal). Instead of waiting the limited additional time required to exhaust the appeal process, Plaintiff decided to abandon the appeal in favor of commencing this action. I do not consider such action reasonable. See Bennett v. Prudential Ins. Co., 192 Fed.Appx. 153, 156 (3d Cir. 2006) (affirming district court decision not to apply futility exception where the plaintiff received two letters from the defendant denying his claim, but failed to exhaust the plan's appeal process).

Plaintiff relies heavily on the third factor, the existence of a fixed policy denying benefits. Plaintiff submits no evidence of a fixed policy, apart from the letters exchanged with counsel for the Fund. This does not fulfill the court's requirement for a "clear and positive showing of futility." See Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Assoc. Trust v. Sidney Charles Markets, Inc., 2003 WL 220181, at *6 (E.D. Pa. Jan. 29, 2003) (letter from plan's counsel stating plan's position that "no person is entitled to a benefit if their employer's right to participate in the VEBA plan has been terminated" does not establish a clear and positive showing of futility where letter also referred the plaintiff to the administrative procedure for determining the validity of the claim for benefits); Sultan v. Lincoln Nat'l Corp., 2006 WL 1806463, at *10 (D. N.J. June 30, 2006) (finding no evidence of fixed policy despite exchange of ten letters between plaintiff's counsel and counsel for the plan, several of which informed plaintiff that she was not entitled to benefits).

The fourth and fifth factors similarly do not support Plaintiff's assertion of futility. While Plaintiff conclusorily argues that Defendant did not comply with its own administrative procedures (Pl. Br. at 2-3), the Complaint alleges that Plaintiff "has submitted all necessary

9

documentation of his eligibility, including medical documentation." (Complaint, at ¶13.) The correspondence further indicates that Plaintiff appealed the denial of benefits, and that the Plan recognized the appeal and was scheduling a hearing in conformance with the Plan's procedures. (Pl. Resp., Ex. A-1.) Nor is there any testimony from a plan administrator that the appeal would have been futile.

Defendant seeks dismissal of the action. As the Third Circuit has noted, this should not be a "surprising result" for ERISA plaintiffs who "decide to bring a federal suit rather than pursuing administrative remedies." D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002). Accordingly, I grant Defendant's motion for judgment on the pleadings dismissing the action.

**ORDER**

AND NOW, this 24th day of March, 2008, after careful consideration, and for the reasons set forth in the accompanying Opinion, the motion for judgment on the pleadings [Docket No. 14] is granted.

BY THE COURT:

/s/ Donetta W. Ambrose

Donetta W. Ambrose
Chief U.S. District Judge